# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**LUIS NOEL RODRIGUEZ-RUIZ,**

   Plaintiff,

     v.

**MICROSOFT OPERATIONS PUERTO RICO, L.L.C.,**

   Defendant.

CIVIL NO. 18-1806 (PG)

## OPINION AND ORDER

### I.  Background

Plaintiff Luis Noel Rodriguez Ruiz ("Plaintiff" or "Rodriguez") filed the above-captioned claim on October 26, 2018. See Docket No. 1. Plaintiff alleges that defendant Microsoft Operations Puerto Rico, L.L.C. ("Microsoft" or "Defendant") discriminated against him and denied him reasonable accommodation in violation of the Americans with Disabilities Act 42 U.S.C. § 12117 et seq. ("ADA"), and wrongfully terminated him pursuant to Law No. 80 of May 30, 1976, as amended, 29 P.R. LAWS ANN., tit. 29, § 185a et seq. ("Law 80"). Plaintiff states that he suffers from cerebral palsy, a major disabling motor disorder that causes him to have a limp and difficulty walking, among other things. Plaintiff also avers that he suffers from severe headaches and back pain after severe and permanent cervical damage suffered in a non-work-related automobile accident.

Pursuant to the allegations in the complaint, on December 5, 2005, Plaintiff commenced his employment with Microsoft as an engineer. According to Plaintiff, on or about the end of the year 2011, his new supervisor Hector Baez began a campaign of discrimination and harassment against him because of his disabilities. Rodriguez alleges

that Baez created a hostile work environment, ordered disadvantageous transfers, gave him poor performance reviews, denied reasonable accommodations and made disparaging comments about Plaintiff's impediments. He was eventually discharged on August 19, 2016. Plaintiff now requests to be indemnified for his wrongful termination and for the damages suffered. He seeks reinstatement, damages for pain and suffering and economic harm, punitive damages, front and back pay in lieu of reinstatement, as well as attorney fees.

Defendant answered the complaint on December 21, 2018 (Docket No. 5) and discovery proceedings ensued. The court held two conferences with parties' attorneys and granted an extension of time to conduct discovery until December 31, 2019. See Dockets No. 10, 12, 14. On the last possible day, Defendant filed a Motion to Compel (Docket No. 15) complaining about Plaintiff's insufficient responses to both its interrogatories and requests for production. The Plaintiff responded arguing that some discovery disputes had already been resolved, and were thus moot, and that some interrogatories and discovery requests were overly broad, burdensome, and/or in violation of Plaintiff's privacy rights. See Docket No. 25.

On February 6, 2020, the court held a status conference in this case to discuss the pending motion. After the conclusion of the conference, the only pending matter in the motion to compel to be adjudged was whether Plaintiff should respond to Interrogatory No. 17 and Requests for Production of Documents Nos. 17 and 18, regarding the production of Plaintiff's Facebook or social media profile(s). As such, the court deems **MOOT** all other issues raised in the motion to compel and will limit the discussion *infra* to Microsoft's request for the content of Plaintiff's social media account on Facebook.

## II. Discussion

### A. General Legal Principles

Rule 26(b)(1) of the Federal Rules of Civil Procedure states that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case … Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Rule 26 promotes fairness both in the discovery process and at trial." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992). That is because "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).

Rule 26 is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Nevertheless, "[t]he proportionality provision was added to Fed. R. Civ. P. 26 (b)(1) in December 2015 to emphasize that there are intended to be limits on the breadth of discovery to which a party is entitled." Viscito v. Nat'l Planning Corp., No. CV 3:18-30132-MGM, 2019 WL 5318228, at *1 (D. Mass. Oct. 21, 2019) (citing Fed. Energy Regulatory Comm'n v. Silkman, No. 1:16-cv-00205-JAW, 2017 WL 6597510, at *6-7 (D. Me. Dec. 26, 2017)).

If a discovery dispute arises, a party seeking discovery may file a motion to compel discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 37(a)(3)(B). "The party seeking information in discovery has the burden of showing its relevance." Viscito v. Nat'l Planning Corp., No. CV 3:18-30132-MGM, 2019 WL 5318228, at *1 (D. Mass. Oct. 21, 2019) (citing Cont'l W. Ins. Co. v. Opechee Constr. Corp., Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016)). On the other hand, "[w]hen a

party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'" Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc., 319 F.R.D. 422, 427 (D.P.R. 2016) (citations omitted).

### B. Parties' Discovery Motions

Pursuant to the motion to compel, Microsoft's Interrogatory No. 17 requests that Plaintiff identify all social media profiles he manages, and Request for Production of Document No. 17 states as follows:

> As to any social media account you may have, produce the following:
>
> a. Complete copy of your profile, including, without limitation, all messages, posts, status updates, comments on your wall or page, causes and/or groups to which you have joined, which are in your account and which were published or posted between January 2010 and the present, related or referring to any emotions, feelings, mental status, or mood status.
> b. Copy of all communications from you, whether through private messages in your profile or messages on your wall or page, which may provide context to the communication mentioned in the previous sub-section.
> c. Any and all photos taken and/or uploaded to your account between January 2010 and the present.

Docket No. 15 at pages 14-15. On the other hand, Request for Production of Documents No. 18 states the following:

> Regarding any Facebook account you have or may have had, the information requested in subsections a - c, may be obtained by following these steps: (1) enter your Facebook profile; (2) go to the "account" section; (3) go to "account settings"; (4) select the option of "download your information"; (5) select "download."

Id. at page 15. In its motion, Defendant opposes Plaintiff's objections to these requests. Specifically, Plaintiff objected the requests are not "related in any way to the case, are overbroad, burdensome, offensive and a violation of plaintiff's right to privacy." See Docket No. 15-4.

**C. Electronic Discovery of Social Media**

Microsoft moves the court to order Plaintiff to provide the requested content of Plaintiff's social media profile because it is relevant to its defenses and, therefore, discoverable. See Docket No. 15 at pages 14-18. Microsoft asserts that the information stemming from his social media profile(a) is also relevant to Plaintiff's mental and emotional state regarding his emotional damages. Microsoft cited a string of cases in support of its contentions that Plaintiff has no right of privacy over the evidence requested and that Plaintiff is required to produce this evidence. See Docket No. 15 at pages 14-18.

In his response, Plaintiff merely states that he has given Defendant authorizations to access his income tax returns, as well as his medical and psychological records, and "that should be enough … ." Docket No. 25 at page 17.

For starters, the court is persuaded that Plaintiff lacks a right to privacy with regards to the content of his social media profile(s). Various courts have held that "[i]nformation posted on a private individual's social media 'is generally not privileged, nor is it protected by common law or civil law notions of privacy.'" T.C on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee, No. 3:17-CV-01098, 2018 WL 3348728, at *14 (M.D. Tenn. July 9, 2018) (citing Potts v. Dollar Tree Stores, Inc., No. 3:11-CV-01180, 2013 WL 1176504, at *3 (M.D. Tenn. Mar. 20, 2013)). See also Gondola v. USMD PPM, LLC, 223 F. Supp. 3d 575, 591 (N.D. Tex. 2016) ("Generally, [social networking site] content is neither privileged nor protected by any right of privacy.") (citing Johnson v. PPI Tech. Servs., L.P., No. 11-2773, 2013 WL 4508128, at *1 (E.D. La. Aug. 22, 2013); Moore v. Wayne Smith Trucking Inc., No. Civ. A. 14-1919, 2015 WL 6438913, at *2 (E.D. La. Oct. 22, 2015) ("It is settled that information on social media accounts, including Facebook, is discoverable.")).

Therefore, Plaintiff's reluctance to produce the content of his social media page(s) on account of a claim to a right of privacy is unfounded.

Having agreed with our sister courts that the posted or published content in a social networking site, such as a Facebook profile, is devoid of a right of privacy, the court must then determine whether the request for production is relevant to the claims being litigated. "Courts have ... found social media, diaries, and journals generally discoverable provided that they are relevant to a plaintiff's claims." Connolly v. Alderman, No. 2:17-CV-79, 2018 WL 4462368, at *5 (D. Vt. Sept. 18, 2018) (citing Brown v. City of Ferguson, 2017 WL 386544, at *1 (E.D. Mo. Jan. 27, 2017) (observing that "generally, social media content is neither privileged nor protected by a right of privacy"); Giacchetto v. Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 114 (E.D.N.Y. 2013) (observing that "the fact that Defendant is seeking social networking information as opposed to traditional discovery materials does not change the [c]ourt's analysis"); Robinson v. Jones LangLaSalle Ams., Inc., 2012 WL 3763545, at *1 (D. Ore. Aug. 29, 2012) (concluding that there is "no principled reason to articulate different standards for the discoverability of communications through email, text message, or social media platforms.")).

More specifically, several courts have found that the contents of a plaintiff-employee's social media profile, postings, or messages (including status updates, wall comments, causes joined, groups joined, activity streams, blog entries during a relevant time period) are relevant and discoverable in employment cases which include claims of emotional distress, when they "reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state." E.E.O.C. v. Simply Storage Mgmt., LLC (, 270 F.R.D. 430, 435 (S.D. Ind. 2010). See also Holter v. Wells Fargo & Co., 281 F.R.D. 340, 344 (D. Minn. 2011) (information from employee's social media sites relating to her emotions,

feelings, or mental state was subject to disclosure); Robinson v. Jones Lang LaSalle Ams., Inc., 2012 WL 3763545, at *2 (D. Or. Aug. 29, 2012)(ordering plaintiff to produce social media content in accordance with principles set forth in Simply Storage). In fact, a fellow judge in this district court has already deemed this type of evidence – to wit, a plaintiff's Facebook profile – discoverable in the context of an employment litigation. See Mercado Cordova v. Walmart Puerto Rico, Inc., No. CV 16-2195 (ADC), 2019 WL 3226893, at *2 (D.P.R. July 16, 2019) (imposing sanctions for spoliation against plaintiff for deleting Facebook account after court ordered production of such evidence at defendant's request in a disability discrimination claim against former employer).

Though courts have concluded that information posted or published on a party's social media page may be relevant, courts generally do not "endorse an extremely broad request for all social media site content." Gondola, 223 F. Supp. 3d at 591 (citing Moore, 2015 WL 6438913 at *2). "[A] party does not have 'a generalized right to rummage at will through information that [an opposing party] has limited from public view.'" T.C on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee, No. 3:17-CV-01098, 2018 WL 3348728, at *14 (M.D. Tenn. July 9, 2018) (citing Potts v. Dollar Tree Stores, Inc., No. 3:11-CV-01180, 2013 WL 1176504, at *3 (M.D. Tenn. Mar. 20, 2013). See also Howell v. Buckeye Ranch, Inc., No. 2:11–CV–1014, 2012 WL 5265170, at *2 (S.D. Ohio Oct. 1, 2012) ("The fact that the information defendants seek is in an electronic file as opposed to a file cabinet does not give them the right to rummage through the entire file."). Such is the case because "[t]here is a distinction between discovery of social media postings that are available to the general public and those that the user has restricted from view." T.C on Behalf of S.C., 2018 WL 3348728 at *14.

With those principles in mind, courts have held that "a plaintiff's entire social networking account is not necessarily relevant simply because he or she is seeking emotional distress damages.'" Moll v. Telesector Res. Grp., Inc., No. 04-CV-0805S(SR), 2016 WL 6095792, at *5 (W.D.N.Y. Oct. 19, 2016) (citing Giachetto v. Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 115 (E.D.N.Y. 2013)). See also Silva v. Dick's Sporting Goods, Inc., No. 3:14cv580, 2015 WL 1275840, at *2 (D. Conn. March 19, 2015) (emotional distress claim does not warrant disclosure of all Facebook posts). The fact that a plaintiff's mental or emotional state is at issue does not "automatically justify sweeping discovery of social media content." T.C on Behalf of S.C., 2018 WL 3348728 at *14. Therefore, "[t]he production of a social media account's contents in full will therefore rarely be appropriate." T.C on Behalf of S.C., 2018 WL 3348728 at *14.

Here, Defendant has adequately demonstrated the relevance of the content of Plaintiff's social media account, and Plaintiff's boilerplate and generalized objections to this request for production are not enough to carry the day. "[G]eneralized objections to an opponent's discovery requests are insufficient." Transcore, 319 F.R.D. at 427 (citing Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358 (D. Md. 2008) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome … are improper unless based on particularized facts."); Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")). Hence, the court finds that some discovery of Plaintiff's social media profile(s) is appropriate here.

The court must now define the permissible scope of this type of discovery in cases like the above-captioned since "[i]t is reasonable to expect severe emotional or mental injury to manifest itself in some [social networking site] content … ." Simply Storage, 270 F.R.D. at

435. To that effect, the court agrees with other district courts' conclusion that social media content that is reflective of a person's emotional state is relevant and discoverable when the same has been placed at issue. For example:

> [P]osts specifically referencing the emotional distress plaintiff claims to have suffered or treatment plaintiff received in connection with the incidents alleged in [his] complaint and posts referencing an alternative potential source of cause of plaintiff's emotional distress are discoverable. … In addition, posts regarding plaintiff's social activities may be relevant to plaintiff's claims of emotional distress and loss of enjoyment of life.

Moll, 2016 WL 6095792 at *5 (citing Caputi v. Topper Realty Corp., No. 14-CV-2634, 2015 WL 893663, at *7 (E.D.N.Y. Feb. 25, 2015); Reid v. Ingerman Smith LLP, No. CV 2012-0307, 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012)).

Pursuant to the foregoing, Microsoft's request for production is hereby granted, but only in part. First, the Plaintiff shall respond to Microsoft's interrogatory requesting he identify all the social media platforms in which he has an account or profile. However, the court will not allow Defendant to have unrestricted access to Plaintiff's social media account(s). Instead, Plaintiff's counsel shall review all of Plaintiff's social media content during the requested period (from January 2010 to the present) and produce any and all content, posts or comments referencing Plaintiff's "emotions, feelings, mental status, or mood status,"[1] (as requested), including any photographs which may have accompanied such posts or comments. The same test shall be applied to the request for Plaintiff's uploaded photos insofar as "pictures of the claimant taken during the relevant time period and posted on a claimant's profile will generally be discoverable because the context of the picture and the claimant's appearance may reveal the claimant's emotional or mental status." Simply

---

[1] Microsoft's Request for Production No. 17.

Storage, 270 F.R.D. at 436. "The Court trusts that plaintiff's counsel, as an officer of the Court, will review social media content and communications and produce any relevant information." Holter, 281 F.R.D. at 344.

Finally, Microsoft may "challenge the production if it believes the production falls short of the requirements of this order. Nothing in this Order is intended to foreclose such follow-up procedures." Simply Storage, 270 F.R.D. at 436. During the course of this exercise, the parties are encouraged to review the cited caselaw for illustration and may file a motion for clarification as to any specific issue of law that arises.

### III. Conclusion

Pursuant to the foregoing, the court hereby **GRANTS IN PART** the single pending issue in Microsoft's motion to compel (Docket No. 15) regarding the complete production of Plaintiff's social media account(s) and/or profile(s); the rest of the matters raised in the motion are found as **MOOT** per the parties' discussions during the conference. Plaintiff has **ten (10) days** from the date of entry of this order to comply and notify the court thereof.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, March 5, 2020.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**