IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS NOEL RODRÍGUEZ RUIZ,

    **Plaintiff,**

            v.

MICROSOFT OPERATIONS PUERTO RICO,

LLC.,

    **Defendant.**

CIVIL NO. 18-1806 (JAG)

## OPINION AND ORDER

GARCÍA-GREGORY, D.J.

    Plaintiff Luis Noel Rodríguez-Ruiz ("Rodríguez-Ruiz" or "Plaintiff") brought suit against his employer, Microsoft Operations Puerto Rico, LLC. ("Microsoft" or "Defendant"), for alleged physical disability discrimination, failure to accommodate, and hostile work environment under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, as well as its equivalent Puerto Rico statute, Act No. 100 of June 30, 1959, P.R. LAWS ANN. tit. 29, §§ 146 *et seq.* ("Act 100"); and wrongful termination, tort damages, costs, and attorney's fees under Puerto Rico law. Docket No. 1.

    On January 30, 2020, Microsoft moved for summary judgment, arguing that (1) Rodríguez-Ruiz cannot establish a viable claim of disability discrimination, hostile work environment, or failure to accommodate under the ADA or any other applicable statute; (2) Rodríguez-Ruiz's termination was justified due to his pattern of poor performance; and (3) alternatively, Rodríguez-Ruiz's claims are time-barred. Docket No. 23. On March 30, 2020, Rodríguez-Ruiz opposed the

CIVIL NO. 18-1806 (JAG)                                                                    2

Motion for Summary Judgment by contending that his employment record refutes Microsoft's

arguments in full and shows that there are genuine issues of material facts. Docket No. 36.

After considering the Parties' positions and the applicable law, the Court **GRANTS**

Defendant's Motion for Summary Judgment, **DISMISSING** all federal claims with prejudice, and

all state claims without prejudice.

STANDARD

A motion for summary judgment will be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party,

and it is material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*,

355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving

party has properly supported [its] motion for summary judgment, the burden shifts to the

nonmoving party . . . ." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000)

(quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The non-movant must demonstrate

"through submissions of evidentiary quality [] that a trial worthy issue persists." *Iverson v. City of

Bos.*, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the entire record "in

the light most hospitable to the party opposing summary judgment, indulging in all reasonable

inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting

CIVIL NO. 18-1806 (JAG)                                                                                      3

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *See Anderson*, 477 U.S. at 255; *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (internal citations omitted).

Finally, as this case involves a federal question, the Court may exercise supplemental jurisdiction on the state law claims, provided they are part of the same case or controversy as the federal question. *Rivera v. Hosp. Episcopal*, 613 F. Supp. 2d 192, 200-01 (D.P.R. 2009).

## FINDINGS OF FACT

The following factual findings are taken from the Parties' statements of uncontested facts and supporting documentation. In accordance with Local Rule 56(e), the Court only credits facts properly supported by accurate record citations. The Court has disregarded all argumentative and conclusory allegations, speculations, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Munoz*, 896 F.2d at 8.

1.      Plaintiff, Rodríguez-Ruiz, began working for Microsoft on December 5, 2005 as a full time Project Engineer in the Engineering Department. He held the same position until his termination on August 19, 2016. Docket No. 23-1 at 2.

2.      Per his job description, Rodríguez-Ruiz had to divide his time among his primary functions as follows: (1) 50% annual time in 24/7 support to manufacturing operations; (2) 10% annual time in project management and implementation of assigned projects; (3) 15% annual time in identifying opportunities for improvement and implementing projects to address them; (4) 10% annual time in the development, monitoring, and trending of established and new Key Performance Indicators and/or Operational Metrics; (5) 10% annual time in participating in troubleshooting efforts, focusing on risk assessments, and conducting root cause analysis investigations and implementation of sustainable solutions; and (6) 5% annual time in maintaining detailed specifications of production machine capabilities and writing technical report SOPs, and following Change Control Procedure. Docket Nos. 23-1 at 3; 36-1 at 3-4; 23-6.

CIVIL NO. 18-1806 (JAG)                                                                     4

3.      As such, Rodríguez-Ruiz was mainly assigned to maintain the process improvement of the manufacturing area, where he had time to do other projects. Yet his priorities and time allocation would vary over time to meet changing business conditions. Docket Nos. 23-1 at 3; 23-4 at 125, 130; 23-6 at 1; 36-1 at 5.

4.      Hector Báez ("Báez") was Rodríguez-Ruiz's skip level supervisor from August 23, 2011 until January 14, 2014. From January 15, 2014 until Rodríguez-Ruiz's termination, Báez was his direct supervisor. Docket No. 23-1 at 4.

5.      While Rodríguez-Ruiz had previously worked on various projects during his employment at Microsoft, when Báez became his direct supervisor, Báez told Plaintiff that he needed him to work full time in the manufacturing area. *Id.*

6.      Báez did not remove all project management duties from Rodríguez-Ruiz and asked Rodriguez-Ruiz to keep delivering certain projects. Docket Nos. 23-1 at 4; 36-1 at 7.

7.      Mildred Sein ("Sein") was hired on July 22, 2005 as Human Resources Manager. At the time of Rodríguez-Ruiz's termination, she was Senior Human Resources Manager. She made recommendations regarding disciplinary processes. Docket No. 23-1 at 4-5.

8.      Migdalia Bonilla ("Bonilla") began working at Microsoft on April 15, 2008 as Materials Manager. At the time of Plaintiff's termination, Bonilla was the Director of Operations or General Manager, responsible for overseeing the daily operations of the site, developing and implementing growth strategies, evaluating performance and productivity, and serving as the ultimate decision maker of employees' termination processes. *Id.* at 5-6.

9.      Jorge López ("López") and Alberto Vázquez ("Vázquez") were contractors for Microsoft assigned to the manufacturing area. Like Rodríguez-Ruiz, they worked as Process Engineers under Báez's supervision. López was a contractor from September 2013 until June 2015. Vázquez was a contractor from December 2014 until July 2016. While López and Vázquez were independent contractors, Rodríguez-Ruiz was a full-time employee of Microsoft. *Id.* at 6.

10.     Microsoft's manufacturing team held daily operations meetings. These were attended by all the supervisors of the manufacturing floor. *Id.* at 7. The various area directors—e.g., Bonilla and Báez—required their key players to attend in person. *Id.* at 6, 8.

11.     For several years, Báez told Plaintiff that he needed to be physically present at the daily meetings and that he did not want him to attend remotely. *Id.*

12.     Rodríguez-Ruiz never submitted any medical evidence to support any request to attend the daily meetings remotely, or to suggest that he needed to attend such meetings remotely or come into work after 9:00 a.m. *Id.*

CIVIL NO. 18-1806 (JAG)                                                                                5

13.    López was also required to attend the daily meetings. Other unnamed Full Time Employees ("FTE") categorized as Process Engineers—assigned to other supervisors—were occasionally allowed to attend by phone. *Id.*; Docket No. 36-1 at 11.

14.    Bonilla, who attended the daily meetings, witnessed when Báez informed his staff of the importance of being physically present at the meetings. The Process Engineers were vital because they were responsible for resolving issues that could affect the operations and could cause production to be stopped or delayed. Docket No. 23-1 at 8.

15.    Rodríguez-Ruiz suffers from cerebral palsy. Because of this, he has a visible limp. He also has a cervical condition caused by a car accident in 2011. *Id.* at 9.

16.    The performance evaluation process at Microsoft was known as *Connect*. This process involved periodic individual evaluations where the direct supervisor and the employee had regular, short, and focused discussions of the employee's performance. *Id.*

17.    In the *Connect* for July 1, 2014 through August 5, 2014, Báez documented that Rodríguez-Ruiz "had opportunities regarding being present and available for his team to drive impact where the action happens and show consistency in his work schedule and process improvement methodology to help manufacturing resources to see him as a reliable source." *Id.*

18.    In the *Connect* for August 6, 2014 through October 14, 2014, Báez documented that Rodríguez-Ruiz, *inter alia*, "did not show proactive communication on deliverables assigned to him and was not driving proactive engineering solutions to floor daily opportunities." *Id.* at 10.

19.    On October 30, 2014, Báez developed an Action Plan to help improve Rodríguez-Ruiz's performance, which included assisting the manufacturing team daily. *Id.* at 10-11.

20.    On November 6, 2014, Rodríguez-Ruiz submitted an internal complaint with Microsoft's Human Resources Department alleging "stressful work environment," "harassment," and "retaliation." While he attached several communications between his supervisors and himself, which he alleges constitute evidence of unlawful conduct, the complaint did not identify any protected categories or disability for which he was being harassed, the names of any employees he believed were treated differently, nor did it state that he had any physical limitations or that he needed any reasonable accommodation for disability-based reasons. *Id.* at 11; *see also* Docket Nos. 23-11; 36-1 at 15.

21.    Sein investigated the internal complaint, reviewing the evidence submitted and interviewing Rodríguez-Ruiz, as well as other employees. On November 11, 2014, she issued a report of the investigation, concluding that Rodríguez-Ruiz's allegations of discrimination and retaliation were not substantiated. On November 24, 2014, after Plaintiff returned from a leave of absence, Sein notified him of the result of the investigation. Docket No. 23-1 at 11-12.

22.     On November 9, 2014, while under the October 2014 Action Plan, Rodríguez-Ruiz notified Báez that he had been involved in a car accident on November 7, 2014 and would be out of work until further notice. *Id.* at 12.

23.     On November 20, 2014, Zuleika Concepción ("Concepción"), then Human Resources Manager, sent Plaintiff a letter instructing him to provide medical documentation before December 1, 2014 to excuse his absences, lest he be deemed to have abandoned his job. *Id.*

24.     On November 24, 2014, upon his return, Rodríguez-Ruiz provided an undated medical certificate. *Id.*

25.     On November 25, 2014, Báez gave Rodríguez-Ruiz a written warning for not providing a return date, informing the status of his condition, or providing a medical certificate (or similar evidence of a medical condition). In the warning, he pointed out that the medical certificate provided on November 24, 2014 was not dated. *Id.*

26.     Per Microsoft's Employee Manual, absences of more than two days must be notified through a medical certificate stating the name and license number of the physician, and the date and time of the appointment. *Id.* at 13-14.

27.     In the *Connect* for October 15, 2014 through January 13, 2015, Rodríguez-Ruiz got an "*Insufficient*" result. Báez indicated that, precisely because of such deficiencies, he had been placed on the October 2014 Action Plan, which was still in effect. *Id.* at 14.

28.     Plaintiff worked on the October 2014 Action Plan goals until March 16, 2015. *Id.* The Action Plan emphasized participation in the daily meetings as a mandatory task for Plaintiff's role, and that it was Báez's expectation that Plaintiff attend meetings and always provide proactive solutions to the team. *Id.*

29.     On March 16, 2015, the Action Plan ended with satisfactory results and Plaintiff was informed that if "another situation occur[s], or if we identify other issue[s] related to unsatisfactory performance, other disciplinary actions could apply [e.g., termination]." *Id.* at 14-15.

30.     On January 29, 2016, Rodríguez-Ruiz received a written warning because he again demonstrated inconsistent performance on tasks and duties; and ineffective quality and agility of support by not participating in critical conversations in the daily operations meetings. Plaintiff was again advised that if the issues continued, more disciplinary actions could be taken. *Id.* at 15-16.

31.     On February 8, 2016, Rodríguez-Ruiz received a Final Warning for engaging in inappropriate conduct during a January 29, 2016 meeting with Báez regarding the written warning issued that day. *Id.* at 16.

CIVIL NO. 18-1806 (JAG)                                                                                      7

32.    On February 10, 2016, Rodríguez-Ruiz submitted an internal complaint with Human Resources alleging harassment and discrimination. *Id.* In it, Plaintiff recounted all the instances since 2014 in which he alleges to have been subjected to discrimination, harassment, and retaliation; reiterated the same allegations of the November 6, 2014 letter; and complained about the written warnings he had received. *Id.*; *see also* Docket Nos. 23-18; 36-1 at 21.

33.    In the complaint, Plaintiff alleged he was the only person with a disability in the group. However, he did not: (1) identify a similarly situated employee without disability that was allegedly treated more favorably, (2) mention that he had any specific limitations nor provide medical evidence to that effect, (3) made allegations of disability-based discrimination or disability-based hostile environment, or (4) petitioned for reasonable accommodations. He claimed that he was occasionally absent from the daily meetings when he was working on projects or daily situations in the manufacturing area, and that other managers in the meetings would update him on any issue discussed during those meetings. Docket No. 23-1 at 17.

34.    In the complaint, Rodríguez-Ruiz requested "any type of accommodation that would allow him to work with normalcy, in peace and without harassment." *Id.* at 18.

35.    On February 17, 2016, Sein met with Rodríguez-Ruiz to discuss his allegations. Sein asked Plaintiff if he was requesting a reasonable accommodation and Rodríguez-Ruiz responded that he was not. On March 5, 2016, Sein issued a report of the investigation and, on March 9, 2016, Plaintiff was notified that there was no violation of company policy. *Id.* at 18-19.

36.    On March 10, 2016, in the *Connect* for November 25, 2015 up until that date, Rodríguez-Ruiz received an "*Insufficient*" result for, *inter alia*, his inconsistent attendance to meetings. *Id.* at 19.

37.    On April 26, 2016, Rodríguez-Ruiz was placed on a Performance Improvement Plan ("PIP") set to end on May 31, 2016, because his performance was falling short of expectations and he continued to show unsatisfactory results. Báez noted that he was giving Plaintiff a final opportunity to improve and that he could be terminated if he did not comply with his responsibilities during the implementation of the PIP. Docket Nos. 23-1 at 19-20; 23-7.

38.    The PIP outlined the objectives that Rodríguez-Ruiz needed to accomplish. These included, among others, sustaining effective communication with customers and peers, and in-person mandatory assistance and participation in the daily operations meetings. *Id.*

39.    On April 26, 2016, Rodríguez-Ruiz submitted a new internal complaint. He alleged that Báez harassed and discriminated against him and asked for a meeting with Human Resources to clarify the PIP's work plan. A Human Resources representative met with him and concluded that the relationship between the Plaintiff and Baez could be salvaged. Docket No. 23-1 at 21.

40.    On June 9, 2016, Rodríguez-Ruiz was told that he had demonstrated efforts to better his performance during the PIP period, but that he still had to improve in several key areas.

CIVIL NO. 18-1806 (JAG)                                                                                          8

Báez extended the PIP until July 7, 2016 and advised Plaintiff that his employment would be terminated if he did not meet his performance objectives by that date. *Id.*

41.      From June 23, 2016 until August 1, 2016, Rodríguez-Ruiz was on a leave of absence. Because the PIP was set to end on July 7, 2016, management decided to extend the PIP for two additional weeks to allow Plaintiff to finish it after returning from leave. *Id.* at 21-22.

42.      At the end of Rodríguez-Ruiz's PIP period, Sein and Báez met with Bonilla to recommend terminating Plaintiff. Bonilla approved the termination based on Plaintiff's failure to (1) meet the PIP goals, (2) adequately fulfill the responsibilities of his position, (3) perform the core skills of his role up to company standards, and (4) show the performance improvement expected by the Company. *Id.* at 22-23.

43.      On August 19, 2016, Rodríguez-Ruiz was terminated for failure to meet the PIP objectives satisfactorily. *Id.*

44.      Rodríguez-Ruiz does not know if there were other employees in his group with any type of disability that were treated better than him. *Id.* at 24.

45.      On May 12, 2017, the Equal Employment Opportunity Commission ("EEOC") issued a Notice of Charge of Discrimination filed by Rodríguez-Ruiz. *Id.* at 25.

## ANALYSIS

As a threshold matter, Rodríguez-Ruiz identifies nine contested material facts that allegedly preclude summary judgment. Docket No. 36 at 7-11. Upon careful review of the record, the Court disagrees with Plaintiff and concludes that such facts are either uncontroverted or non-material to the claims presented.[1] As such, there are no factual disputes that would preclude summary judgment in this case.

---

[1] For example, Rodríguez-Ruiz states, *inter alia*, that "[t]he reason for Báez assigning [him] to work 100% [in] Manufacturing is plain and simply wrong because that was not plaintiff's job description and evidences a discriminatory animus." Docket No. 36 at 7-9. This remark shall not be construed as a fact; rather, it constitutes Plaintiff's own conclusory allegation as to the potential legal implications of reassigning him to the manufacturing area. The same applies to the following statements, among others, because they are not substantiated by the record: (1) "when the plaintiff requested from Báez a reasonable accommodation on account of [his] disabilities, such request was summarily denied;" (2) "other Microsoft 'FTE' employees of the same classification as Plaintiff were allowed to" have accommodations; (3) "Human Resources did not properly investigate Plaintiff's complaint." *Id.* at 10-11.

CIVIL NO. 18-1806 (JAG)                                                                    9

### I.   Timeliness of the ADA Claims

Defendant first contends that Rodríguez-Ruiz's claims constitute "discrete acts" and that all such acts occurring at least 300 days before Plaintiff filed the EEOC charge are time barred. Docket No. 24 at 11-12. Under this theory, because Plaintiff filed the EEOC charge on May 12, 2017, all acts occurring before July 16, 2016 would be untimely. In response, Rodríguez-Ruiz argues that "in addition to the occurrence of several [uninterrupted] discriminatory acts," he has "alleged acts that, as a whole, encompass a [continuous] hostile work environment claim," reason for which his claims are tolled and should be treated as part of one single event. Docket No. 36 at 13-14. Rodríguez-Ruiz's theory is incorrect because this case is predicated on discrete discriminatory acts and, therefore, the continuing violation doctrine is inapplicable.

A claimant under the ADA must exhaust administrative remedies as a prerequisite to filing suit before this Court. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98 (1982). In relevant part, a plaintiff must file an EEOC charge alleging ADA discrimination within 300 days after the alleged discriminatory act occurred. *Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 277-78 (1st Cir. 1999). Discrete acts occurring more than 300 days before the filling of an EEOC charge are time-barred. *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir. 2006); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."). In this Circuit, the following constitute discrete acts: termination, failure to promote, failure to assign work, negative performance evaluations, and letters of warning, among others. *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).

CIVIL NO. 18-1806 (JAG)                                                                              10

Here, Rodríguez-Ruiz alleges that his supervisor, Báez, on separate occasions: (1) transferred him to be full-time in the manufacturing area, (2) evaluated him improperly, (3) refused to transfer him back, (4) refused to give him reasonable accommodations, (5) made disparaging comments about physical impediments and the request for accommodation, (6) wrongfully reprimanded him, (7) imposed subjective goals as part of action and performance improvement plans, and (8) terminated him for disability reasons. Docket No. 1 at 5-6. Each of these facts, if true, constitute discrete acts, as they are all separate and easily identifiable.

Moreover, Rodríguez-Ruiz fails to establish how these discrete acts should be deemed part of the same and repeated unlawful practice or ongoing "pattern." Docket No. 36 at 12. "Hostile work environment claims do not turn on single acts but on an aggregation of hostile acts . . . ." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002) (quoting *Havercombe v. Dep't of Educ.*, 250 F.3d 1, 6 (1st Cir. 2001)). Rodríguez-Ruiz would be allowed to proceed on a hostile environment claim if "all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the [statutory] time period." *AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002). Yet, neither the record nor Plaintiff's allegations have identified a hostile act—within the 300 days before the filing of the EEOC charge—that substantially relates to the otherwise time-barred conduct. The termination, grounded on performance issues, is in no way like the rest of the alleged unlawful conduct. *See* Docket No. 23-1 at 22-24; *see also Nat'l R.R. Passenger Corp.*, 536 U.S. at 102-03 ("Hostile work environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the "unlawful employment practice," § 2000e–5(e)(1), cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, *a single act of harassment may not be actionable on its own*.") (citations omitted)

CIVIL NO. 18-1806 (JAG)                                                                          11

(emphasis added). Plaintiff's conclusory argument that all these acts are part of one "continuous" and "repeated" hostile work environment is insufficient. Docket No. 23-4 at 97.

Alternatively, Rodríguez-Ruiz incorrectly argues that the continuing violation doctrine applies here. Such doctrine "allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012) (citations omitted). It ensures claims "are not pretermitted because the claimant needed to experience a pattern of repeated acts before she could be expected to realize that the individual acts were discriminatory in nature." *Id.* at 144 (citing *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 54 (1st Cir. 1999)). As explained, the purportedly discriminatory acts here are clearly distinguishable and lack the pattern-like quality described by Rodríguez-Ruiz, because the claims are based on specific performance improvement actions, job function reassignments or discrepancies, and the alleged denial of a reasonable accommodation request. Docket No. 36 at 13. Rodríguez-Ruiz had a year from the date of each act to file an actionable claim or otherwise toll the limitations period. The record is devoid of any evidence suggesting that he needed to experience a pattern before realizing the discriminatory nature of each act.

As such, because the EEOC charge was filed on May 12, 2017, Plaintiff's only actionable disciplinary action is the termination that occurred on August 19, 2016. All acts that occurred before July 16, 2016—i.e., the Action Plan of October 30, 2014; the November 20, 2014 letter; the written warnings issued on November 2014, January 2016 and February 2016; the alleged transfer to the manufacturing floor in 2014; the "negative evaluations" (*Connects*) of 2014; and the April 2016 PIP—are time-barred. *See, e.g.*, Docket No. 23-1 at 10, 13, 15-16, 21.

CIVIL NO. 18-1806 (JAG)                                                                    12

## II.    ADA Claims

### A.  Disability Discrimination Under the ADA

To establish a *prima facie* case of disability discrimination under the ADA, Rodríguez-Ruiz must prove by a preponderance of the evidence: (1) that he is disabled within the meaning of the ADA; (2) that he is able to perform the essential functions of his job, with or without reasonable accommodation; and (3) that the adverse employment decision was based in whole or in part on his disability. *Phelps v. Optima Health Inc.*, 251 F.3d 21, 24 (1st Cir. 2001); *Marcano–Rivera v. Pueblo Int'l.*, 232 F.3d 245, 251 (1st Cir. 2000); *Garcia–Ayala v. Lederle Parenterals Inc.*, 212 F.3d 638, 646 (1st Cir. 2000). However, absent direct evidence that the defendant harbored a discriminatory animus in taking an employment action, a plaintiff must rely on the burden-shifting model established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Sanchez v. Western Auto of P.R.*, 68 F. Supp. 2d 93, 98 (D.P.R. 1999).[2] Once the plaintiff establishes a *prima facie* case of disability discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell*, 411 U.S. at 802. However, the employer's burden is merely one of production; the plaintiff retains the burden of persuasion at all times. *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 823 (1991).

Assuming without deciding that Rodríguez-Ruiz's condition constitutes a disability under the ADA and that he can perform the essential functions of his job, Plaintiff nevertheless fails to establish the third prong of the *prima facie* case, because he is unable to establish that the adverse employment action—his termination—was motivated in whole or in part by his

---

[2] Here, Plaintiff lacks direct evidence of discrimination. Therefore, the Court must assess his claim under the familiar *McDonnell Douglas* framework.

CIVIL NO. 18-1806 (JAG)                                                                 13

disability. At this third prong, Rodríguez-Ruiz must proffer sufficient evidence that his employers were motivated by discriminatory animus. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 176 (1st Cir. 2003). In other words, that he was "adversely affected *in whole or in part* because of [his] disability." *Jones v. Nationwide Life Ins.*, 696 F.3d 78, 86-87 (1st Cir. 2012) (citations omitted) (emphasis added).[3]

In relevant part, Rodríguez-Ruiz alleges that Microsoft conceived a plan "to justify Plaintiff's termination of employment and cover up the illegal [disability-based] discrimination" against him. Docket No. 36 at 41. He also claims that Báez discriminated against him once he became his direct supervisor and that his termination was due to his physical disability, which limited his movement and caused him to walk with a limp. Docket Nos. 23-1 at 9; 36 at 41. Nonetheless, the uncontested record shows that Rodríguez-Ruiz has no evidence suggesting that Microsoft or Báez had discriminatory animus towards him, or that the decision to terminate the employment was based, at least in part, on Plaintiff's disability.

In his deposition testimony, Rodríguez-Ruiz admits several times that the only reason for believing that he suffered disability discrimination was because he was the only employee with a plainly visible disability. Docket No. 23-4 at 115-16, 178-80. Moreover, he admitted not knowing if there were other employees with disabilities in his group, or if they were treated better than him under similar circumstances. *Id.* at 116, 168-69, 180-81, 182-84, 193, 197, 253-54. When asked whether he knew the reason for Báez's alleged discriminatory treatment, Plaintiff admitted not knowing. *Id.* at 180. These admissions reveal the unsupported basis for Plaintiff's conclusory and

---

[3] In its Memorandum in Support of the Motion for Summary Judgment, Microsoft incorrectly contends that the applicable causality standard is that of "but-for" causation. Hence, Microsoft argues that Plaintiff failed to provide evidence that he was discharged solely "because of his disability." Docket No. 24 at 12-13. However, ADA discrimination claims abide by a more lenient causality standard. *See Jones*, 696 F.3d at 86-87.

CIVIL NO. 18-1806 (JAG)                                                         14

speculative allegations of discrimination, especially considering that the record shows he was

unable to meet performance objectives that were clearly established in several action plans. Thus,

Plaintiff has failed to tie the adverse employment action to his disability in any way.[4]

Assuming *arguendo* that Rodríguez-Ruiz established a *prima facie* case of discrimination,

Microsoft has produced a valid, non-discriminatory reason for discharging Plaintiff from

employment, therefore satisfying the burden of production and transferring the burden to

Rodríguez-Ruiz to show that the articulated reason is a mere pretext for discrimination.

*Mesnick*, 950 F.2d at 823. Plaintiff must do more than cast doubt on the defendant's

justification. *Id.*; *Lawrence v. Northrop Corp.*, 980 F.2d 66, 69 (1st Cir. 1992). In other words, Plaintiff

must adduce evidence on what is really the ultimate question in this litigation: whether his

termination was a result of Microsoft's intent to discriminate on the basis of his disability. *Conward*

*v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999).

Here, Plaintiff was terminated after failing to meet objectives which were reasonably and

clearly established in several action and improvement plans, as well as evaluations. Docket No.

23-1 at 14-16, 20-22. To prove this, Microsoft submitted affidavits from everyone involved in the

termination of Plaintiff's employment, as well as each *Connect* evaluation and warning letter

leading up to the termination, and copies of the performance and action plans. *See* Docket Nos.

23-3; 23-5; 23-7; 23-10; 23-12; 23-15; 23-16; 23-17. Most importantly, Microsoft notified Rodríguez-

Ruiz every time he improved his performance, and every time he did not meet the employer's

---

[4] This conclusion is further supported by the fact that Plaintiff also failed to identify any non-disabled comparable individuals, i.e. full-time engineers, who were treated more favorably than him. "[A]n employee claiming differential treatment must show that those with whom she seeks to be compared 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Trahan v. Wayfair Maine, L.L.C.*, 957 F.3d 54, 62 (1st Cir. 2020) (citations omitted).

CIVIL NO. 18-1806 (JAG)                                                          15

expectations. In fact, on various occasions, Báez notified Plaintiff that if his performance did not

improve, he risked termination. *See, e.g.*, Docket Nos. 23-15 at 2; 23-16 at 2. Plaintiff's performance,

nevertheless, continued to miss various objectives outlined in the PIP, such as Báez's requirement

that Rodríguez-Ruiz be present at the daily meetings and the manufacturing floor. *See* Docket

Nos. 23-3 at 2-3; 23-5 at 2-3; 23-7; 23-12 at 2-3; 23-16; 23-17. Likewise, there is evidence showing

that Microsoft investigated Plaintiff's internal complaints regarding discrimination in a *bona fide*

way. Sein's sworn statement gives an account of the internal investigations, which shows no

disability-based discriminatory or hostile treatment. Docket No. 23-5 at 3-4.

        The record attests to the reasonableness and legitimacy of Microsoft's justification in

discharging Plaintiff from his employment. Plaintiff has presented no evidence that would

controvert this or even suggest that the reason articulated by Microsoft is a sham. Nor has he

presented any evidence tending to show any discriminatory animus. Therefore, Plaintiff's

discrimination claims under the ADA are **DISMISSED** with prejudice.

### B. Failure to Accommodate under the ADA

        Rodríguez-Ruiz also advances a failure to accommodate claim. Specifically, he argues that

Báez "refused to and actually told [him] that no reasonable accommodation would be made to

enable [him] to continue to do his work," and that "when [he] advised Báez of his personal and

physical limitation, and sought to be present at [daily] meetings by other means of

communications . . . Báez recommended [him] to go to HR and/or to take a leave of absen[ce]."

Docket No. 36 at 37, 39. This claim is time-barred because all acts that could potentially amount

to a failure to accommodate claim occurred outside the statute of limitations. *See supra* section I.

CIVIL NO. 18-1806 (JAG)                                                            16

Likewise, the denial of his alleged reasonable accommodation request was never filed before the EEOC. In fact, "[t]he only written evidence of something having to do with an accommodation was the February 2016, internal complaint where [Rodríguez-Ruiz] asked for an 'accommodation' consisting of 'being able to work in peace,' or 'change in supervisor.'" Docket No. 24 at 40. Such request and its alleged denial were made more than a year before the filing of the EEOC charge. *See* Docket Nos. 23-4 at 215-16; 23-1 at 18. The same is true even if the Court were to consider any of Plaintiff's informal conversations with Sein and Báez as reasonable accommodation requests, which it does not because Rodríguez-Ruiz admitted not remembering when he had such conversations. *See* Docket No. 23-4 at 128-29, 134, 239.

As such, Plaintiff's failure to accommodate claim under the ADA is **DISMISSED** with prejudice.[5]

## C. Hostile Work Environment Under the ADA

The First Circuit has not squarely addressed the issue of whether the ADA recognizes a viable hostile working environment claim. *See Brader v. Biogen, Inc.* 983 F.3d 39, 59 (1st Cir. 2020) (citing *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 86, n.1 (1st Cir. 2016)) (collecting cases that have assumed the viability of such a claim or applied such a theory without directly tackling the issue, while also citing cases that expressly decline to decide this issue)). Some courts have assumed,

---

[5] Assuming *arguendo* that Plaintiff's claim is not time-barred, he would still fail to satisfy the ADA. The record suggests that he provided Defendant with no evidence of his condition for purposes of reasonable accommodation. Docket No. 23-4 at 129-31, 136-38, 230-31. And while in his deposition Plaintiff alleges that he conversed with Báez and Sein about his limitation to stand, *id.* at 129-30, 134, 136-39, this alone does not suffice to give reasonable notice. *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260-61 (1st Cir. 2001) ("The employee's request must be 'sufficiently direct and specific,' giving notice that she needs a 'special accommodation.' At the least, the request must explain how the accommodation requested is linked to some disability.") (citation omitted). More so when the record suggests that Plaintiff himself admitted not requesting a health-related accommodation in his February 10, 2016 letter and that he did not provide evidence to this effect. Docket Nos. 23-4 at 129-31, 137-39, 215-16; 23-5 at 4; *see also Reed*, 244 F.3d at 261 (noting that failure to notify disability and the need for accommodation is a "fatal flaw").

CIVIL NO. 18-1806 (JAG)                                                                 17

without deciding, that plaintiffs can bring hostile working environment claims under the ADA,

but have granted defendants summary judgment for lack of factual substance. *See, e.g., Rodriguez v.*

*Loctite of P.R., Inc.*, 967 F. Supp. 653, 663-67 (D.P.R. 1997); *Gunderson v. Neiman–Marcus Group, Inc.*, 982

F. Supp. 1231, 1234 (N.D. Tex. 1997). Others have found that such an action indeed exists under

the ADA but nevertheless granted summary judgment for lack of factual support. *See, e.g., Miller v.*

*Taco Bell Corp.*, 204 F. Supp. 2d 456, 465 (E.D.N.Y. 2002); *May v. Roadway Express Inc.*, 221 F. Supp. 2d

623, 629-30 (D.Md. 2002). The Court will not decide whether such a cause of action exists

because, even assuming *arguendo* that it does, Plaintiff has failed to support such a claim.[6]

In their rulings on hostile work environment claims under the ADA, courts have adopted

the standard set forth by *Harris v. Forklift*, 510 U.S. 17, 21 (1993) (citations omitted), requiring

plaintiffs to prove that their workplace was "permeated with [] intimidation, ridicule, and insult."

Occasional insulting comments and behavior, no matter how hurtful, are insufficient to support

a claim of hostile work environment. *Id.* at 21. As such, to establish this claim, Plaintiff must prove

that (1) he is a qualified individual with a disability; (2) he was subjected to harassment; (3) that

the harassment was based on his disability; (4) that the harassment was so severe or pervasive

that it altered the conditions of employment; and (5) that the employer knew or should have

known of the harassment and failed to take remedial action. *Mohammadian v. CIBA Vision of P.R. Inc.*,

378 F. Supp. 2d 25, 31 (D.P.R. 2005) (citing *Fox v. Gen. Motors Corp.*, 247 F.3d 169 (4th Cir. 2001);

*see also Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006).

---

[6] This Court previously disposed of a similar situation in the same manner in *Mohammadian v. CIBA Vision of P.R. Inc.*, 378 F. Supp. 2d 25, 31 (D.P.R. 2005).

Courts have granted summary judgment on hostile work environment claims under the ADA when the comments and behavior alleged by plaintiffs were not so pervasive or severe as to alter the conditions of their employment and, therefore, constitute an adverse employment action. *See Henry v. Guest Services, Inc.*, 902 F. Supp. 245, 252 (D.D.C. 1995) (holding that coworkers' cartoon ridiculing plaintiff's depression does not support a hostile work environment claim); *McClain v. Southwest Steel Co.*, 940 F. Supp. 295, 301-02 (N.D.Okla. 1996) (holding that calling an employee with mental health issues "crazy" and "lunatic" did not suffice to create a hostile work environment). In this case, assuming without deciding that a hostile work environment claim can be brought under the ADA and ignoring the untimeliness of the ADA claims and the fact that Plaintiff did not establish a repeated unlawful practice by Microsoft, Plaintiff has failed to put forth sufficient evidence to support such a claim.

Specifically, prongs two and three of the *prima facie* case for hostile work environment claims have not been met. Rodriguez-Ruiz contends that he was called a "street engineer," that "others" said his medical leaves were "like vacations," and that he was told his failure to attend meetings would "reflect on his evaluations." Docket No. 23-4 at 149-56. These statements may be inappropriate, but do not reach the level of pervasiveness or severity required by *Harris*. Most importantly, nothing in the record shows how these statements—or any other conduct referenced in this Opinion—amount to ridicule or intimidation, much less how they are tied or related to Plaintiff's disability. *Id.*; *see also Sepulveda-Vargas v. Caribbean Rests. LLC*, 888 F.3d 549, 556 (1st Cir. 2018). To the contrary, Plaintiff's deposition testimony shows that Báez did not make any specific jokes about his disability or his alleged requests for reasonable accommodations. Docket No. 23-4 at 154-58.

CIVIL NO. 18-1806 (JAG)                                                                19

Accordingly, Plaintiff's hostile work environment claim under the ADA is **DISMISSED** with prejudice.

III.    **State Law Claims**

Plaintiff's remaining claims are grounded in Puerto Rico law. Generally, district courts should decline to exercise supplemental jurisdiction over a plaintiff's state law claims when all federal claims are dismissed. *Camelio v. Am. Fed.*, 137 F.3d 666, 672 (1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation."). Because the Court dismisses Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction and **DISMISSES** without prejudice any claims made under Puerto Rico law.

CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, Docket No. 23, is **GRANTED**. Plaintiff's claims under the ADA are **DISMISSED** with prejudice, and the claims pursuant to Puerto Rico law are **DISMISSED** without prejudice. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this Thursday, March 11, 2021.

S/ JAY A. GARCIA-GREGORY
JAY A. GARCIA-GREGORY
SENIOR U.S. DISTRICT JUDGE